```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

SEQUOYAH OZOROWSKY,

    Plaintiff,

v.                                 Case No. 8:20-cv-2564-VMC-AEP

BAYFRONT HMA HEALTHCARE
HOLDINGS, LLC,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff Sequoyah Ozorowsky's Motion for Judgment as a Matter of Law and Alternatively Motion for New Trial (Doc. # 121), filed on January 3, 2022. Defendant Bayfront HMA Healthcare Holdings, LLC responded on January 28, 2022. (Doc. # 130). For the reasons that follow, the Motion is denied.

**I.  Background**

The parties and the Court are familiar with the underlying facts and the Court need not restate them here. Ozorowsky initiated this action against his former employer, Bayfront, on November 2, 2020. (Doc. # 1). He filed an amended complaint on January 8, 2021, asserting claims for: failure to reemploy in violation of the Uniformed Servicemembers Employment and Reemployment Rights Act (USERRA) (Count I);

1

discrimination in violation of USERRA (Count II); retaliation in violation of USERRA (Count III); disability discrimination under the Americans with Disabilities Act (ADA) (Count IV); disability discrimination under the Florida Civil Rights Act (FCRA) (Count V); retaliation under the ADA (Count VI); retaliation under the FCRA (Count VII); and violation of Florida's Private Sector Whistleblower Act (FWA) (Count VIII). (Doc. # 26).

After discovery, Bayfront moved for summary judgment on all claims and Ozorowsky moved for partial summary judgment on liability for all claims. (Doc. ## 48, 52). The Court denied both summary judgment motions and highlighted a central conflict in this case: the "dispute over whether Ozorowsky requested additional time off during" a September 12, 2019, meeting based on the different versions of events provided by Ozorowsky and Bayfront employees Lee Ann Arbogast and Drew Sandt. (Doc. # 58 at 23-24).

The case proceeded to trial, during which differing testimony was given regarding what happened in the September 12 meeting. At the close of evidence, Ozorowsky moved for judgment as a matter of law on his USERRA failure to reemploy claim. (Tr. at 696:19-697:1). Specifically, counsel for Ozorowsky stated: "We're specifically moving for a – for a

judgment as it pertains to the [Section] 4312 — 38 U.S.C. [§] 4312 claim, failure to reemploy, because the Defendant has not shown that — has admitted that it was supposed to promptly reemploy Plaintiff, and it has not proven that it promptly reemployed Plaintiff." (Id.). The Court reserved ruling on that motion. (Tr. at 697:5-6).

The case then went to the jury, which returned a verdict in Bayfront's favor on all claims. (Doc. # 102). Now, Ozorowsky has renewed his motion for judgment as a matter of law only as to the USERRA failure to reemploy claim and, alternatively, requests a new trial. (Doc. # 121). Bayfront has responded (Doc. # 130), and the Motion is ripe for review.

## II. Legal Standard

In reviewing a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), "a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." Chaney v. City of Orlando, Fla., 483 F.3d 1221, 1227 (11th Cir. 2007); see also Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004) (stating that judgment as a matter of law should only be granted "when there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue"). "In considering whether the

verdict is supported by sufficient evidence, 'the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party.'" McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995)). The district court must not make credibility determinations or weigh evidence, as these are functions reserved for the jury. HGR Constr., Inc. v. Hanover Ins. Co., No. 6:18-cv-1406-PGB-LRH, 2021 WL 868609, at *2 (M.D. Fla. Feb. 1, 2021). Judgment as a matter of law should be granted only where "the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1246 (11th Cir. 2001).

Regarding a motion for new trial, Rule 59(a) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows: [] after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "[M]otions for a new trial are committed to the discretion of the trial court." Montgomery v. Noga, 168 F.3d 1282, 1295 (11th Cir. 1999). "And, the

4

reasons justifying such relief include 'a verdict which is against the weight of the evidence, substantial errors in the admission or rejection of evidence, and improper opening statements or closing arguments.'" Williams v. R.W. Cannon, Inc., No. 08-60168-CIV, 2009 WL 2834955, at *2 (S.D. Fla. Aug. 27, 2009) (quoting Rosa v. City of Fort Myers, No. 2:05-cv-481-JES-SPC, 2008 WL 398975, at *2 (M.D. Fla. Feb. 12, 2008)). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great — not merely the greater — weight of the evidence.'" Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (citation omitted).

**III. Analysis**

    **A.  Judgment as a Matter of Law**

Ozorowsky argues that he is entitled to a judgment as a matter of law on his USERRA failure to reemploy claim. (Doc. # 121 at 1). According to him, he applied for reemployment in his voicemail to Sandt in August 2019 because this call "sufficiently conveyed he intended to be reemployed." (Id. at 11-12). And he notes that there were over fourteen days "between Ozorowsky's telephone communications with Bayfront

5

in August 2019 and his third and final in-person communication on September 12, 2019." (Id. at 12). Thus, Ozorowsky argues that Bayfront failed to promptly reemploy him as required by USERRA. (Id. at 12, 21-22).

He also argues that Bayfront impermissibly required him to apply for reemployment multiple times as a prerequisite to reemployment, because Ozorowsky made multiple visits to Bayfront in September before meeting with Sandt and Arbogast on September 12. (Id. at 13). Ozorowsky argues next that, even crediting the testimony that Ozorowsky declined to come back to work on September 12, 2019, Bayfront has not "prove[n] the affirmative defense of impossibility." (Id. at 17). According to Ozorowsky, "[a]nything short of an executed writing by Ozorowsky [waiving his right to reemployment] would require the jury to engage in impermissible speculation and thereby necessitates a grant of judgment against Bayfront." (Id. at 18).

### (1) Failure to Reemploy

Although Ozorowsky sufficiently raised this issue in his pre-verdict Rule 50(a) motion, the Court is unconvinced by Ozorowsky's primary argument that Bayfront failed to promptly reemploy Ozorowsky. Under USERRA, "any person whose absence from a position of employment is necessitated by reason of

service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if" he meets certain criteria. 38 U.S.C. § 4312(a). Indeed, "[t]he employer must promptly reemploy the employee when he or she returns from a period of service if the employee meets the Act's eligibility criteria." 20 C.F.R. § 1002.180. "'Prompt reemployment' means as soon as practicable under the circumstances of each case. Absent unusual circumstances, reemployment must occur **within two weeks** of the employee's application for reemployment." 20 C.F.R. § 1002.181 (emphasis added).

Substantial evidence at trial — especially the testimony of Arbogast — supported that Bayfront did not fail to promptly reemploy Ozorowsky. First, there was substantial evidence that Ozorowsky did not seek reemployment in his August 2019 voicemail to Sandt. Indeed, Ozorowsky testified that he told Sandt that he "was injured, and [he] did not know when [he] would be able to return [to work] at that time." (Tr. at 127:25-128:3). Thus, the jury could reasonably have concluded that Ozorowsky did not seek reemployment with Bayfront until September 3, 2019, when he appeared at Bayfront and informed Laurie Sparr that he was released from the Army. (Tr. at 135:11-23; 326:10-327:6). Importantly, the meeting with Sandt

7

and Arbogast took place on September 12, 2019 — only nine days after Ozorowsky first came to Bayfront on September 3. (Tr. at 624:20-22).

And Arbogast testified that, during the September 12 meeting, she offered Ozorowsky (1) the same ER night-shift full-time patient access position he had held before his military leave, and (2) a different full-time patient access position at the free-standing ER. (Tr. at 625:6-22; 626:25-627:5). But Ozorowsky said he was not yet ready to return to work because he was "still recovering" from his injury. (Tr. at 625:9-12). And he declined both positions. (Tr. at 625:21-22). Despite Ozorowsky's declining to come back to work at that time, Arbogast testified that Ozorowsky remained an employee of Bayfront in a leave of absence status, with his life insurance being paid by Bayfront, and he was eligible to return to work at any time. (Tr. at 632:21-633:1; 655:11-656:12). Arbogast explained that there were many openings at Bayfront's hospital and so having "a team member return to work was really an attractive proposition for [Bayfront]." (Tr. at 628:1-13).

Although Ozorowsky testified about the September 12 meeting differently (Tr. at 276:9-13), the jury was not required to believe his version of events and the Court

8

disregards his testimony about the meeting in evaluating this Motion. See Cleveland, 369 F.3d at 1193 ("[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." (citation omitted)).

As the Court instructed the jury on the reemployment claim, "[t]o prove that Bayfront violated the reemployment requirement of USERRA, Mr. Ozorowsky [had to] prove by a preponderance of the evidence that Bayfront failed to offer him reinstatement to a position of like seniority, status and pay, as soon as was practicable under the circumstances." (Doc. # 98 at 12). Substantial evidence existed that Bayfront promptly made such an offer of reemployment on September 12, but Ozorowsky declined it. Therefore, the Court will not disturb the jury's verdict on this claim and the Motion is denied.

### (2)  Waiver and Multiple Application Arguments

Next, regarding the waiver and multiple applications for reemployment arguments, Bayfront is correct that "these arguments were absent from the evidence presented [at trial], and they were absent from [Ozorowsky's] pre-verdict motion [for judgment as a matter of law]." (Doc. # 130 at 9). Thus, these arguments cannot form the basis of Ozorowsky's Motion.

See Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 903 (11th Cir. 2004) ("This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury.").

Even liberally construing Ozorowsky's Rule 50(a) motion at trial as having raised these arguments, they fail. Again, regarding Ozorowsky's argument that Bayfront violated 38 U.S.C. § 4302(b) by "[r]equiring Ozorowsky to [a]pply on [m]ultiple [o]ccasions as a [p]rerequisite to [r]eemployment" (Doc. # 121 at 12), Ozorowsky did not assert a Section 4302 claim in his amended complaint and did not argue this theory at trial. Additionally, although Ozorowsky had gone to Sparr on September 3 and 6 to discuss reemployment, Sparr testified that she told Ozorowsky on September 3 to contact Arbogast or Sandt, who was his manager, and on September 6 that she would try to coordinate with Sandt to arrange a meeting. (Tr. at 326:22-327:10; 329:8-24). Indeed, Sparr advised Ozorowsky to speak to Sandt or Arbogast because Sparr, as a recruiter with Bayfront, did not "have any ability to give [] Ozorowsky his job." (Tr. at 327:13-16).

At the September 12 meeting, which was the first time Ozorowsky met with Arbogast or Sandt and which was less than two weeks after he informed Bayfront of his release from the Army, Arbogast testified that she offered Ozorowsky the same position he held before his military leave as well as other positions. (Tr. at 625:12-14; 626:25-627:5). After he declined, Arbogast told Ozorowsky to let her or Sandt know when he was ready to come back to work and they would "have [him] back working the next day." (Tr. at 632:21-633:1). Arbogast did not require Ozorowsky to "go to a doctor to prove that he was hurt" or provide documentation of his injury. (Tr. at 689:2-12). Thus, there was substantial evidence that, although it took a few days for Bayfront to arrange the meeting with Sandt and Arbogast and during those few days Ozorowsky contacted Bayfront multiple times, Bayfront was not requiring Ozorowsky to apply multiple times for reemployment and promptly offered him positions.

As for waiver, again, Bayfront correctly notes that "[t]here was no evidence at trial or even raised in an affirmative defense that Bayfront maintained that [Ozorowsky] waived his right to reemployment." (Doc. # 121 at 14). Notably, the jury's verdict was that Bayfront did not fail to promptly reemploy Ozorowsky (Doc # 102 at 2), not that

11

Bayfront had proven as an affirmative defense that Ozorowsky waived his reemployment rights, or that it was impossible to reemploy him. Regardless, Arbogast testified that, after Ozorowsky declined to accept his position back during the September 12 meeting and even after Ozorowsky retained counsel, Bayfront remained hopeful that Ozorowsky would eventually return to work. (Tr. at 648:24-649:6). Arbogast further testified that Ozorowsky remained an employee of Bayfront in a leave of absence status and was eligible to return to work at any time even after the September 12 meeting. (Tr. at 632:21-633:1; 655:11-656:12). This is evidence that Bayfront was not arguing waiver of reemployment or impossibility.

Even if it had been arguing waiver, Arbogast's testimony that Ozorowsky declined her offers of prompt reemployment into his previous position (or other similar positions) would be substantial evidence that Ozorowsky clearly waived his right to prompt reemployment. See Breletic v. CACI, Inc.– Fed., 413 F. Supp. 2d 1329, 1337 (N.D. Ga. 2006) ("[T]he legislative history of the USERRA quoted above indicates that a person can waive his or her rights under the USERRA, but any such waiver must 'be clear, convincing, specific, unequivocal, and not under duress. Moreover, only known

12

rights which are already in existence may be waived.'" (quoting H.R. Rep. No. 103-65 (1994), as reprinted in U.S.C.C.A.N. 2453)); Scudder v. Dolgencorp, LLC, 900 F.3d 1000, 1004 (8th Cir. 2018) ("A service member waives his right to reemployment by 'clearly and unequivocally' resigning." (citation omitted)). Ozorowsky has cited no authority holding that a waiver of reemployment must be written to be clear and unequivocal, nor does the Court believe such a written waiver is required.[1]

The Motion is denied as to these arguments.

---

[1] Additionally, Ozorowsky cites irrelevant case law in support of his assertion that "[a]nything short of an executed writing by Ozorowsky would require the jury to engage in impermissible speculation and thereby necessitates a grant of judgment against Bayfront." (Doc. # 121 at 18). In particular, he cites to two cases dealing with prospective waivers of reemployment rights — employees who were alleged to have prospectively waived the right to reemployment by resigning before leaving their jobs for military leave. (Id. at 18 n.8) (citing Lapine v. Town of Wellesley, 304 F.3d 90, 107 (1st Cir. 2002) and Sykes v. Columbus & Greenville Ry., 117 F.3d 287, 296 (5th Cir. 1997)). Indeed, Ozorowsky creatively trimmed a quotation from one case to obscure the fact that the case involved a prospective waiver — a fact scenario irrelevant to the current case. See (Id.) (quoting Lapine, 304 F.3d at 107, as stating "waivers of veteran's reemployment rights . . . are not to be easily inferred and should be reserved for the most unusual circumstances" when the case actually states, "**prospective** waivers of veterans' reemployment rights . . . are not to be easily inferred and should be reserved for the most unusual circumstances" (emphasis added)). While counsel's conduct certainly falls below what the Court expects of officers of the Court, the Court declines to impose sanctions.

### B. New Trial

The Motion must be denied as to Ozorowsky's request for a new trial. As Bayfront correctly points out (Doc. # 130 at 7), Ozorowsky failed to outline the standard for a new trial in his Motion and likewise failed to make any argument for why a new trial is warranted under that standard. This is insufficient to establish entitlement to a new trial and the Motion is denied on this basis alone. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

Regardless, the Court agrees with Bayfront that a new trial is not warranted under Rule 59 because the jury's verdict was not against the great weight of the evidence. See Lipphardt, 267 F.3d at 1186 ("Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great — not merely the greater — weight of the evidence.'"). The same evidence discussed in relation to the motion for judgment as a matter of law was consistent with the jury's verdict. No

14

other reasons for a new trial exist. Thus, the Motion is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Sequoyah Ozorowsky's Motion for Judgment as a Matter of Law and Alternatively Motion for New Trial (Doc. # 121) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 14th day of February 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

15